ANDREW CROOK, Respondent, *against* ELIZA J. HARPER, Appellant.

(Decided April 1st, 1878.)

Under the provisions of the Code that on appeal from justices' judgments the court " shall give judgment according to the justice of the case without regard to technical errors which do not affect the merits," a justice's judgment, or one where rendered on the verdict of a jury, will not be reversed for error in the admission or exclusion of evidence, if upon the whole case as it appears upon the return, the court is satisfied the judgment is right and that no injustice has been done; but this does not apply to the Marine Court, since authority was given to that court, and upon appeal from it to grant new trials.

Where the question at issue is, whether or not certain goods, consisting of meats for daily use, were sold by the plaintiff, a butcher, to the defendant, the keeper of a boarding-house, where they were all delivered, the defence being, that they were sold to a third party, a boarder in the house, to whom they were charged by the plaintiff, and it appears that for a long series of years the plaintiff had furnished meats used in the house, charging them first for a period of time to such third person, then to the defendant, and again to such third party, for which last sales the action was brought, *it seems*, that a letter from such third party to the plaintiff on the subject of payment for such goods supplied during the period when they were charged to the defendant, and tending to show the mutual relation of the parties in the course of dealing, is admissible in evidence as part of the *res gestæ*.

APPEAL by the defendant from a judgment rendered on the verdict of a jury in the Seventh District Court of the city of New York.

The facts appear in the opinions.

*Vanderpoel, Green & Cuming,* for appellant.

*Thomas Cushing,* for respondent.

CHARLES P. DALY, Chief Justice.—It does not follow upon a review of a justice's judgment that we must necessarily reverse it because some error may have been committed in the admission of evidence. Where the appellate court may grant a new trial, the rule prevails that if any improper evidence was admitted a new trial will be granted, unless the court can see clearly that it could not have weighed with the jury. (*Worrall* v. *Parmlee,* 1 Comst. 521.) But in an appeal from a justice's judgment we have no authority to grant a new trial. We must either affirm or reverse the judgment in whole or in part, and we should not reverse it unless, upon a review of the whole case as it comes before us, we are satisfied that the judgment was wrong. The statutory provision of the Code under which we exercise our appellate jurisdiction declares, that upon the hearing of the appeal we "shall give judgment *according to the justice of the case,* without regard to *technical errors* which do not affect the merits." When this provision was enacted, which is still retained in the Code, it was equally as applicable to an appeal from a judgment of the Marine Court as from a justice's judgment. But since its enactment the jurisdiction of the Marine Court has not only been increased from $100 to $2000, but authority was conferred upon us, after this large increase of jurisdiction, to grant new trials in appeals from the Marine Court instead of reversing the judgment; and it may be, since this increase of jurisdiction and the power given to us to rectify error by ordering another trial in appeals from the Marine Court, that the anterior provision

in the Code in respect to technical error and defects that do not affect the merits, and that we shall give judgment according to the justice of the case, does not apply with the same force as formerly to appeals from that court. But it still applies to appeals from justice's judgments, and we have frequently refused to review such judgments, though there may have been error in admitting or excluding evidence, if, upon the whole case, as it appeared to us upon the return, we were satisfied that the judgment was right, and that no injustice had been done. Such is my view in the present case, even if it was error, which is by no means clear, to admit Smith's letter to the plaintiff in evidence. If the letter had been excluded, I am of opinion that the judgment ought to have been for the plaintiff, and it is to be inferred that it would have been, and would be upon the same state of facts, no matter how often it might be left to a jury.

But as I have said, I am by no means clear that it was error to allow this letter to be given in evidence. The plaintiff was a butcher, who supplied the house, which was owned, and the whole of which was occupied, by the defendant, Mrs. Harper, with butcher's meat continuously for ten or eleven years, and the question in the case was, whether, during this long course of delivery, the credit was given by the plaintiff to her, or to a boarder in the house, Mr. Smith. We must assume from the verdict of the jury, that in respect to all the conflicting testimony they found in favor of the plaintiff, and believed, amongst other facts sworn to by the plaintiff, that Smith was some years before a member of a firm that failed; that he told the plaintiff so, and that when he failed he owed the plaintiff a sum of money, which has never been paid. Smith resided in the house with Mrs. Harper during the whole of the time that the plaintiff supplied it with meat. The plaintiff testified that some years previously the meat supplied was charged to Smith, but that when Smith got into trouble, about eight years before the trial, he told the plaintiff to charge it to the defendant, Mrs. Harper, which the plaintiff did; and that afterwards Smith requested the bill to be made out to him, which was done, as they regarded

him and her as the one family ; and it appeared from the entries in the books, and from the bills, that the meat was sometimes charged to her and sometimes to him. Smith, it appears, made all the payments, but the plaintiff considered, as he swore, that Smith was dealing with him for Mrs. Harper, and swore that she was the party he sold the meat to and whom he trusted. Smith, it appears, told the plaintiff's book-keeper to charge the bills thereafter to him, which the book-keeper said she did on her own responsibility, without any order from the plaintiff, her father, as she did not think it made any difference, because she always took them (Smith and Mrs. Harper) for *one*, in business transactions.

One of the plaintiff's employees, Atrien, testified that up to the time when they ceased dealing, about a year before the trial, he frequently went to Mrs. Harper's with meat, and received his orders from her and never from Smith.

The plaintiff testified that Smith had been doing business for Mrs. Harper for eleven years. She admitted that he had been in her house for ten or eleven years; that he sometimes transacted business for her ; that when she gave directions, he obeyed the orders ; that she paid him no salary, and that she was the proprietor of the house and occupied the whole of it. She swore that she never gave any written orders for meat, and was contradicted by the plaintiff's witnesses. The plaintiff's witness, Atrien, testified that he went to her house nearly every day for eighteen months, and received his orders from her; that she told him what she wanted for the day ; that he saw Mr. Smith, but Mrs. Harper always gave him the orders ; that he never received any from Smith, but always from her; that the orders were sometimes in writing, and that they were written by her; that her name was generally written on the order, and one of the orders, with her initials to it, was produced upon the trial.

Smith was examined for the defence. He testified that he dealt with the plaintiff for meat from 1853 to 1874. That from 1874 to 1876 he dealt with Mrs. Harper, and after that he dealt with the plaintiff ; that no bills were presented to

her after 1876, nor were any made out, to his knowledge, except to him ; that he had resided in her house for ten or twelve years, and that the position he occupied there was that *of a boarder ;* that he supplied the house with meat for eight or ten years and paid for it; that he supplied it in place of board ; that he was to pay $20 a week for board, and that the meat came to about that amount; that she allowed him for meat from $2 to $3 a day; that he paid money for her to a deputy-sheriff, and that she allowed him some of it that they kept an account. He was asked if he knew the exact amount between them, and whether they had any settlement. His answer was, " We do not settle every month."

We have here a man residing in Mrs. Harper's house for more than ten years as a boarder. He paid for his board at the rate of $20 a week, by supplying her with about that amount of meat per week, which he purchased of the plaintiff ; and in addition to this, transacted business for her sometimes, and when she gave directions, obeyed her orders. This statement is suspicious, and the jury have found it to be improbable and untrue. There is certainly enough to justify that conclusion independent of the letter, to the contents of which I have heretofore made no reference. It was obviously the not uncommon case of a party who is responsible procuring goods, as far as it can be arranged and carried out, as if bought by one that is irresponsible, so that the one that has the benefit may, at any time, be absolved from liability and escape from paying for them. As long as the meat continued to be paid for, which was the case for eight or nine years, it was of little consequence to the butcher to make out the bill when requested by Smith to him instead of Mrs. Harper ; but when the large amount of $300 had become due the responsibility of paying this large amount was shifted from her to Smith, who was irresponsible. The question to whom the credit was given extended over the whole period of dealing, about eleven years, and these acts of the parties in respect to the dealing, in the curious relation between them, constituted the *res gestæ.* A letter written by him, in the

ordinary course of the dealing, to the plaintiff in' 1876, apologizing for Mrs. Harper's not paying a note made by her, as she had depended upon getting money from the foreclosure of a mortgage which would be paid to her the following week, when she would pay the note, and the note coming due the next month, was not *res inter alia acta*, but a part of the history of the mutual relation of the parties in the course of this dealing, having a direct bearing upon the question whether the credit was given to him or to her.

JOSEPH F. DALY, J., concurred; VAN HOESEN, J., dissented.

Judgment affirmed.